IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ELLIS AND BLANCA GARCIA
AS GUARDIANS AND NEXT FRIENDS OF
JESUS MANUEL RAMIREZ (A minor),

      Plaintiffs,

vs.                                                                                         NO.  CV 04-1180 RB/RLP

QUESTA SCHOOL DISTRICT, NELSON LOPEZ,
SUPERINTENDENT, IN HIS OFFICIAL AND
INDIVIDUAL CAPACITY, BEN GURULE, PRINCIPAL,
IN HIS OFFICIAL AND INDIVIDUAL CAPACITY,
JOSE ANTONIO LOPEZ, TEACHER AND
ASSISTANT FOOTBALL COACH, IN HIS
OFFICIAL AND INDIVIDUAL CAPACITY,

      Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' Questa School District ("Questa"), Nelson Lopez ("Superintendent Lopez"), and Ben Gurule ("Principal Gurule") motion for summary judgment, for qualified immunity for individual defendants, and to stay proceedings.  For the following reasons, the Court **GRANTS** Defendants' motion for summary judgment.

**I. Background.**

Plaintiff Jesus Manuel Ramirez ("Ramirez") is the now 17 year-old minor son of Ellis and Blanca Garcia and attended Questa High School in September 2002.  (Compl. ¶¶ 3, 6.)  Ramirez served as Questa High School's football team manager at that time.  (Compl. ¶ 6.)  Ramirez alleges that Jose Antonio Lopez, a Questa High School teacher and assistant football coach, sexually molested him when he grabbed Ramirez's testicles for 20-30 seconds at approximately 3:30 p.m. on

September 16, 2002. *Id.* In addition to the pain and humiliation the alleged incident caused him, Ramirez contends that he was forced to travel more than an hour and a half each day to attend school in Taos because Defendants failed to provide a safe learning environment and continued to employ Jose Lopez. (Compl. ¶¶ 7, 8.)

Prior to hiring Jose Lopez, Questa conducted a routine background check, which did not reveal any previous improper sexual contact with students. (Aff. of Nelson Lopez ¶ 4.) Before the September 16, 2002 incident, however, another Questa student accused Jose Lopez of grabbing the student's finger in an effort to discipline the student. *Id.* at ¶ 6. Superintendent Lopez investigated that incident but could not verify that Jose Lopez actually hurt the student. *Id.* at ¶¶ 7, 8. Principal Gurule also stated that he heard that Jose Lopez had lifted a student up by his ears when he worked for Penasco Schools, but had no knowledge of the details of that incident. (Def. Ben Gurule's Responses to Pls.' First set of Interrogatories.)

After the September 16, 2002 incident, Superintendent Lopez and Principal Gurule conducted an investigation. *Id.*; (Aff. of Nelson Lopez ¶ 7.) Superintendent Lopez interviewed other students and coaches at the scene and none corroborated Ramirez's claim that Jose Lopez grabbed his testicles. (Aff. of Nelson Lopez ¶ 8.) Jose Lopez told Superintendent Lopez that he grabbed Ramirez's knee because he was acting rowdy and calling the other coaches and students names. *Id.* at ¶ 9. Questa suspended Jose Lopez without pay for five days following his encounter with Ramirez and required Jose Lopez to complete anger management counseling. (Def. Ben Gurule's Responses to Pls.' First set of Interrogatories.) Moreover, the Questa Police Department filed a criminal complaint against Jose Lopez for misdemeanor aggravated battery on February 10, 2004. (Reply of Defs.' Mot. for Summ. J., Ex. A.)

In September 2002, Questa had a sexual harassment policy and conducted training sessions for teachers at the beginning of each school year at which teachers were advised of the school's policy. The policy stated that "No employee of the school district may engage in any conduct of a sexual nature with any student, regardless of the student's age, ability to consent or actual consent."

Plaintiffs filed a seven-count Complaint against Defendants for: 1) sexual battery; 2) intentional infliction of emotional distress; 3) failure to supervise and monitor school employees; 4) failure to ensure the safety of Ramirez; 5) failure to properly hire and train Jose Lopez; 6) failure to provide an education to Ramirez; and 7) deprivation of civil rights. (Compl. ¶¶ 11-34.) Plaintiffs state that their action arises under 42 U.S.C. § 1983, the Constitution of New Mexico, and the New Mexico Tort Claims Act. (Compl. ¶ 1.)

**II. Analysis.**

**A. It is unnecessary for the Court to rule on Defendants' motion to stay discovery.**

The Court need not rule on Defendants' motion to stay discovery. Defendants correctly assert that when a qualified immunity defense is raised the Court should postpone all discovery until it determines whether Defendants are entitled to qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Workman v. Jordan*, 958 F.2d 332, 336 (10th Cir. 1992). Since Defendants' motion for summary judgment should be granted, however, it is unnecessary for the Court to rule on Defendants' motion to stay discovery.

**B. Standard of review.**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV.

P. 56(c). A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court views the evidence in the light most favorable to the nonmoving party in applying this standard. *Cooperman v. David*, 214 F.3d 1162, 1164 (10th Cir. 2000).

### C. Plaintiffs' 42 U.S.C. § 1983 claim.

42 U.S.C. § 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . or other proper proceeding for redress." The Supreme Court, in *Monell v. New York City Dep't of Soc. Services*, held that municipalities and other local government bodies are "persons" within the meaning of Section 1983 436 U.S. 658, 689 (1978). In addition, official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Id.* at 690, fn. 55. Plaintiffs' claims against Superintendent Lopez and Principal Gurule, therefore, are analyzed in the same manner as their claims against Questa. Because a government body can not be held liable under Section 1983 solely because it employs a tortfeasor, Defendants can be sued under that section but not solely on the basis that they employed Jose Lopez. *Id.* at 689.

Moreover, sexual assault or molestation by a school teacher violates a student's substantive due process rights. *See Abetya v. Chama Valley Indep. Sch. Dist. No. 19*, 77 F.3d 1253, 1255 (10th Cir. 1996). School children also have an equal protection right to be free from sexual harassment by their teachers. *SH.A. v. Tucumcari Mun. Sch.*, 321 F.3d 1285, 1288 (10th Cir. 2003); *Johnson v. Martin*, 195 F.3d 1208, 1218 (10th Cir. 1999). Viewed in the light most favorable to Ramirez,

4

therefore, he can assert a Section 1983 claim because Jose Lopez violated his constitutional rights to due process and equal protection. The issue, however, is whether Defendants can be held liable for Jose Lopez's actions.

The Supreme Court has consistently refused to hold local governmental bodies liable under a *respondeat superior*, or vicarious liability, theory. *See Bd. of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 403 (1997). Instead, in order to impose liability against Questa, Ramirez must identify a "policy or custom" that caused his injury. *Monell*, 436 U.S. at 694. Ramirez can also show that "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decision-maker may fairly subject [Questa] to liability on the theory that the relevant practice is so widespread as to have the force of law." *Brown*, 520 U.S. at 404 (internal citations omitted).

Plaintiffs claim that Defendants acted improperly in hiring, training, supervising, and retaining Jose Lopez. With respect to Defendants' decision to hire Jose Lopez, "a § 1983 plaintiff . . . must . . . demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged . . . ." *Id.* This means that "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.* (emphasis in original). In other words, "[t]o the extent that we have recognized a cause of action under § 1983 based on a single [hiring] decision attributable to a municipality, we have done so only where the evidence that the municipality had acted and that the plaintiff had suffered a deprivation of federal rights also proved fault and causation." *Id.* at 405.

In order to prove that Defendants are liable for hiring Jose Lopez, Ramirez must "demonstrate

that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences . . . [because] [a] showing of simple or even heightened negligence will not suffice." *Id.* at 407.  The Supreme Court explained that "'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* at 410.  To meet this standard, "[a] plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision . . . . Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'" *Id.* at 411.

The Supreme Court explained the need to apply a strict standard in assessing municipal liability for a hiring decision in the following manner:

> Cases involving constitutional injuries allegedly traceable to an ill-considered hiring decision pose the greatest risk that a municipality will be held liable for an injury that it did not cause.  In the broadest sense, every injury is traceable to a hiring decision.  Where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability.  As we recognized in *Monell* and have repeatedly reaffirmed, Congress did not intend municipalities to be held liable unless *deliberate* action attributable to the municipality directly caused a deprivation of federal rights.  A failure to apply stringent culpability and causation requirements raises serious federalism concerns, in that it risks constitutionalizing particular hiring requirements that States have themselves elected not to impose." *Id.* at 415.

In *Brown*, for example, the Supreme Court found that a sheriff's inadequate assessment of an officer's background did not establish "deliberate indifference" for purposes of Section 1983 municipal liability. *Id.*  In *Brown*, the plaintiff argued that the officer's use of excessive force was the

6

obvious consequence of the sheriff's failure to screen the officer's record, which included misdemeanor convictions for assault and battery, resisting arrest, and public intoxication. *Id.* at 412. The Court reasoned that unless the sheriff's review of the officer's record would have led him to conclude that the officer's "use of excessive force would have been a plainly obvious consequence of the hiring decision . . . inadequate scrutiny of [the officer's] record cannot constitute 'deliberate indifference' to respondent's federally protected right to be free from a use of excessive force." *Id. at 414*.

In this case, Questa conducted a routine background check before hiring Jose Lopez that did not reveal any prior improper sexual contact with students. There were two incidents of alleged physical contact between Jose Lopez and students. After hiring Jose Lopez, Superintendent Lopez investigated an alleged finger grabbing incident at Questa but could not verify that the student had actually been hurt. Principal Gurule also heard rumors about an incident in which Jose Lopez picked a student up by the ears in another school district. Nothing in Jose Lopez's background would lead Defendants to conclude that he was "highly likely to inflict the *particular* injury suffered by [Ramirez]"--that is, improper sexual contact. *Brown*, 520 U.S. at 411. Because the "connection between the [applicant's ] background . . . and the specific constitutional violation alleged must be strong," Plaintiffs' Section 1983 claim based on Defendants' decision to hire Jose Lopez fails as a matter of law. *Id.* The Court will address Ramirez's inadequate training claim as well.

An "inadequate training" claim can be the basis for Section 1983 liability in "limited circumstances." *Id.* at 407. However, such a claim stands only where "the existence of a pattern of tortious conduct by inadequately trained employees may tend to show that the lack of proper training, rather than a one-time negligent administration of the program or factors peculiar to the officer

7

involved in a particular incident, is the 'moving force' behind the plaintiff's injury." *Id.* at 407-08.

In this case, Questa had a sexual harassment policy that specifically forbade any sexual contact between school employees and students. All teachers were advised of this policy during their annual training sessions. Plaintiffs' claim that Defendants' failed to adequately train Jose Lopez, therefore, is without merit. Defendants' motion for summary judgment on Plaintiffs' Section 1983 claim is GRANTED.

### D. Plaintiffs' state law claims.

The Court has supplemental jurisdiction over the remaining state law claims because they are so related to the federal claims that they form part of the same case or controversy. *See* 28 U.S.C. § 1367; *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966). However, the Court may decline to exercise supplemental jurisdiction where it has dismissed all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c). As the Supreme Court noted, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7 (1988); *see also United States v. Botefuhr*, 309 F.3d 1263, 1273 (10th Cir. 2002).

In this case, Plaintiffs' federal claims have been dismissed at an early stage of the litigation. The remaining claims arise under state law. The Court finds that the interests of judicial economy, convenience, fairness, and comity weigh against the exercise of supplemental jurisdiction. Because the Court GRANTS summary judgment to Defendants on Plaintiffs' federal claims under 42 U.S.C. § 1983, the Court declines to exercise jurisdiction over the remaining state-law claims. Accordingly,

8

the Court remands the remaining claims.

### III. Conclusion.

The Court GRANTS Defendants' motion for summary judgment on Plaintiffs' 42 U.S.C. § 1983 claim. The Court declines jurisdiction and remands the remaining state law claims.

*[signature]*

-------------------------------------------

**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**